**INJUNCTION AGAINST COLLECTION OF A SEWER ASSESSMENT.**

Circuit Court of Cuyahoga County.

GEORGE MUNZ ET AL V. GEORGE F. MYERS, TREASURER, ET AL.

Decided, November 18, 1912.

*Taxation—Special Assessments Must be Levied in Proportion to Benefits.*

Where in a sewer assessment district consisting wholly of farm lands, some of the lands are very remote from the sewer, while others are in close proximity to it and would be enabled to use the sewer as an outlet by making a short extension, an assessment which levies the same amount per acre upon the remote lands as upon those in close proximity to the sewer, is not levied in proportion to the benefits, and its collection will be enjoined.

*M. W. Beacom*, for plaintiff in error.
*J. A. Cline, W. D. Meals* and *Green, Zmunt & Zmunt*, contra.

WINCH, J.; MARVIN, J., and NIMAN, J., concur.

This is an action to enjoin the collection of special assessments levied upon the lands of plaintiffs in the village of Newburgh Heights ti pay for the building of a sewer in Cuyahoga street in said village, and an outlet thereto. It is contended that although the assessments were pretended to be levied according to benefits, they were not in fact so levied by the municipal authorities.

The case was heard upon an agreed statement of facts from which it appears that Newburgh Heights covers a territory of about three square miles of irregular shape, but extending north and south perhaps twice as long as its width east and west. On the northern boundary of the village is a creek running into the Cuyahoga river. At about the middle of the northern boundary on this creek was established the outlet of this sewer, and it was built to the south from there some 855 feet, to the intersection of Washington boulevard and Cuyahoga street, and then the sewer proper was built southerly some 2,000 feet on Cuyahoga street to Harvard street, which runs east and west.

Cuyahoga street may be said to bisect the northern part of the village and is about three thousand feet long, ending at the tracks of the South Shore Railroad, which here runs in a generally east and west direction. The thickly populated part of the village lies north of these tracks; south of them are farm lands.

Washington boulevard, from the point where it intersects Cuyahoga street, curves to the southeast and then runs in a southerly direction parallel to Cuyahoga street, and about one thousand feet east of it, until it ends at Harvard street, from which point Independence road extends to the southerly boundary of the village, as a continuation of Washington boulevard.

All the proceedings for the building of the sewer, issuing of bonds to pay for it, levying assessments and equalizing them, were regualar and the assessments levied should be paid, if the

amount found to be due from the several property owners was rightly determined according to law.

No estoppel is pleaded or claimed to bar the action of plaintiffs, if they are right in their contention that the assessments were improperly distributed.

In distributing the cost of the improvement the assessing board and the equalizing board determined the area of the territory to be assessed by its elevation with reference to the improvement in question, and limited it to those lands which could be drained into it either by direct connection or through the construction of intermediate sewers having their outlet in the improvement.

The area thus designated for assessment was divided into three classes; the lands furnished drainage by direct connection with the improvement, those furnished drainage through intermediate sewers connecting with the improvement at some point along Cuyahoga street and those furnished drainage through intermediate sewers to be connected with the so-called outlet at some point north of Cuyahoga street.

No complaint is or can be made of this division of the benefited lands into classes. Plaintiff's lands belong to the third class and the area thus thrown into the third class, its size, shape and character and the method of dividing the assessments among the owners of property of the third class must be further considered.

From the map in evidence it appears that the first class of property lies along Cuyahoga street; the second class is a compact territory nearly round in shape, lying on both sides of Cuyahoga street, which appears as the north and south diameter of the circle. The third class shows on the map as an irregular strip of land, lying on both sides of Washington boulevard and extending from north of Cuyahoga street to the south, passing the second class with a narrow width of 200 or 300 feet, and then broadening out to perhaps 1,500 feet in width, then contracting to a narrow width, and lying on both sides of Independence road. Evidently it was thought that another sewer would sometime be built through Washington boulevard com-

mencing north of Cuyahoga street, paralleling Cuyahoga street to Harvard street, and then running south along Independence road a distance of over 8,000 feet, and that the property in this territory, called the third class, would be benefited by a sewer so constructed and emptying into the so-called outlet at the north.

The most graphic way to describe this third class territory, without a map, is to call it a shoe string, with the northerly end tied to the improvement and the southerly end eight thousand feet away on the farms of plaintiffs.

Now the assessors state that they levied the assessments within this territory at the rate of $17 for each and every acre of it, the southernmost acre being assessed the same as the northernmost acre lying next to the improvement or outlet.

The council legislated on this subject and declared that all assessments should be according to benefits; the assessors reported the assessments at $17 per acre, and solemnly declared that they had levied the assessment according to benefits; the council adopted the assessor's report and the report of the equalizing board, which was the same, and all declared that the assessment had been made according to benefits, but the agreed statement of facts contradicts all these statements and shows that the assessment was not made according to benefits, but by a rule of thumb which is nowhere authorized by the statutes of Ohio.

Manifestly an acre of land a mile and a half from a sewer is not benefited by it equally with an acre of land within one or two hundred feet of it. There is no present advantage from the construction of the sewer to the owner of the land at the south end of this narrow strip of territory, while there is to the owner at its north end. Nor will the owner at the south ever be benefited by the construction of this particular improvement, until a sewer is built a mile and a half along down Washington boulevard and Independence road, and then he will be assessed for the construction of that sewer.

That this territory in class three should be assessed some part of the cost of the outlet may be conceded, but the owner of land in this territory on Washington boulevard near the outlet can

connect with it at once, while the plaintiffs may not live long enough to get any benefit from it.

The geography of the third class territory contradicts the assertion that every acre in it is equally benefited by the improvement.

It appearing that the assessments levied upon plaintiffs' lands were not made according to benefits, their collection is enjoined.